**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**WENDELL L. CRUSE,**

      **Plaintiff,**

**v.**                             **Case No.:   3:13-cv-18768**

**DAN FRABRIZIO, WSAZ NEWS
DIRECTOR, GRAY TELEVISION,
And WSAZ NEWS CHANNEL THREE,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

On July 11, 2013, Plaintiff Wendell Cruse ("Cruse") filed a *pro se* complaint alleging defamation and intentional and negligent infliction of emotional distress. (ECF No. 1). The parties agree that diversity jurisdiction in this Court is appropriate under 28 U.S.C. § 1332. Currently pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. (ECF No. 11). Cruse has filed a response in opposition to the Motion to Dismiss, (ECF No. 16), and Defendants have replied. (ECF No. 17). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the materials supplied by the parties and finds the issues to be clear. Accordingly, oral argument is not necessary for disposition of the

motion. For the reasons set forth herein, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss the Plaintiff's Complaint be **GRANTED**; that Plaintiff's complaint be **DISMISSED**, with prejudice; and that this action be removed from the docket of the Court.

## I.   <u>Relevant Facts</u>

On the morning of June 6, 2009, Cruse was arrested in Catlettsburg, Kentucky on various charges, including trafficking in a controlled substance. (ECF No. 11-2 at 2). Later that day, the Boyd County Sheriff's Department issued a news release prepared by Deputy John Daniels, which summarized the circumstances surrounding Cruse's arrest. (ECF No. 11-3 at 2). According to the news release:

> Wendell Cruse was stopped in the 300 block of 35th Street for a traffic violation. Upon further investigation, a large amount of prescription drugs, ledgers, cash money, and money grams to Florida were recovered. Pill bottles were prescribed to other people in the area. Cruse described himself as a mule that only transported people and pills for a fee. The owners are being looked at as connection to Florida Pill Pipeline to the local area.

(*Id.*). At 8:50 p.m. on June 6, 2009, WSAZ published an article on its website captioned, "Man Calls Self 'Mule' in Drug Pipeline" (the "Article"). (ECF No. 1 at 2). The Article stated the following:

> CATLETTSBURG, Ky. (WSAZ) -- A man who describes himself as a "mule" and delivers prescription pills for a fee was arrested and charged Saturday.
>
> According to a news release from the Boyd County Sheriff's department, Wendell Cruse was stopped in the 300 Block of 35th Street for a traffic violation. Deputies searched his car and found a large amount of prescription drugs, ledgers, cash and money grams to Florida.
>
> Police say the bottles had the names of people from the Catlettsburg area on them.
>
> Cruse told police he just delivered the pills for a fee. He is 51 and from Chesapeake, Ohio.

> He is facing several charges including trafficking a controlled substance within one-thousand feet of a school.
>
> Deputies say they are looking at this case as a part of a pill pipeline out of Florida sending drugs to the area.

(*Id.* at 9).

On August 23, 2012, Cruse was stopped by the Bowling Green, Ohio Police Department on a traffic violation. (*Id.* at 2). The police subsequently searched his vehicle pursuant to a warrant obtained from the Bowling Green Municipal Court. (*Id.* at 2, 10). On October 31, 2012, Cruse requested a copy of his file from the municipal court and saw, for the first time, WSAZ's 2009 article. According to Cruse, the Bowling Green Police Department used the Article as grounds for obtaining the warrant to search his vehicle. (*Id.* at 2-3).

On November 5, 2012, Cruse contacted Dan Fabrizio, WSAZ's news director, and requested that the Article be removed from the website because it was false and defamatory. (*Id.* at 3). Cruse explained that he had never described himself as a "mule" in a drug pipeline, nor had he stated that he delivered pills for a fee. (ECF No. 1 at 3). Fabrizio asked Cruse to put his request in writing, and Cruse promptly complied, sending his request by certified mail. (*Id.*). However, even after receiving Cruse's written request, WSAZ failed to remove the Article, and it continues to be publicly available on WSAZ's website.

## II.   <u>Complaint and Motion to Dismiss</u>

Cruse alleges four causes of action in his complaint. First, he claims that WSAZ's 2009 article is false and libelous; in particular, he takes issue with the caption of the Article and the representation that he admitted to being a "mule" and delivering pills for a fee. (*Id.* at 3-4). He alleges that WSAZ acted negligently and recklessly in failing to

determine the truth of these statements. Moreover, he contends that WSAZ published the Article in order "to create sensationalism at Plaintiff's expense and in order to increase ad revenue;" thus, WSAZ acted "with actual malice and with the intent to cause harm to Plaintiff." (*Id.*). For his second and third counts, Cruse claims intentional and negligent infliction of emotional distress. (*Id.* at 4-5). Cruse asserts that WSAZ intended to subject him to ridicule and distress when the Article was published, and, even after being notified that the Article contains false statements, WSAZ continues to broadcast it in conscious disregard and indifference to Cruse's emotional state.[1] Finally, Cruse's fourth cause of action is for punitive damages. Cruse points to WSAZ's refusal to remove the Article as evidence of its reckless disregard of Cruse's continuing "psychological trauma and suffering." (*Id.* at 5).

In response, Defendants argue that Cruse's libel claim fails as a matter of law for two simple reasons. First, the Article is true, and second, the Article fairly reports a matter of public interest. (ECF No. 12 at 2). Defendants next argue that Cruse's two counts based upon the infliction of emotional distress are factually and legally inadequate. (*Id.* at 3-4). Because the Article is a fair and accurate report of the Boyd County Sheriff's Department's news release, the Article cannot reasonably be described as "extreme and outrageous," as is necessary to state a cause of action for intentional infliction of emotional distress. In addition, Cruse does not state the elements of a negligent infliction of emotional distress claim, in that no physical injury is alleged. As to Cruse's last count, Defendants emphasize that West Virginia does not recognize a stand-alone cause of action for punitive damages. (*Id.* at 4).

---

[1] The Article is not available on WSAZ's website as a current publication, but can be retrieved from the website's database by using search terms such as Mr. Cruse's name.

### III.   **Standard of Review**

Defendants demand dismissal of Cruse's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. A complaint fails to state a compensable claim when, viewing the well-pleaded factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Supreme Court explained the "plausibility" standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted). Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While the Court is required to accept as true the factual allegations asserted in the complaint, it is not required to accept the legitimacy of "a legal conclusion that is couched as a factual allegation." *Id.* at 678 (quoting *Bell Atlantic Corp*, 550 U.S at 555).

Courts are required to liberally construe *pro se* complaints, such as the one filed in this action. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I.*

*Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading "to include claims that were never presented," *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). A Rule 12(b)(6) motion should be granted only "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Calif. Dep't of Corr. & Rehab.,* 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008)).

"Matters outside of the pleadings are generally not considered in ruling on a Rule 12 motion." *Williams v. Branker,* 462 F. App'x 348, 352 (4th Cir. 2012). However, the Fourth Circuit has "recognized an exception for written documents referred to in the complaint and relied upon by the plaintiff in bringing the civil action." *HQM, Ltd. v. Hatfield,* 71 F. Supp. 2d 500, 502 (D. Md. 1999) (citations omitted). Likewise, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and the plaintiff[ ] do[es] not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)). Finally, "courts may consider 'relevant facts obtained from the public record,' so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013) (quoting *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Here, the Boyd County Sheriff Department's new release and the

Article posted by WSAZ are integral to the pleadings, and their authenticity has not been challenged. Consequently, the undersigned has relied upon them in making findings of fact relevant to the motion to dismiss.

## IV.   Discussion

Having examined each of Cruse's causes of action, the undersigned finds that the complaint fails to state a claim for which relief may be granted.

### A.   Libel

Cruse contends that the Defendants knew or should have known that statements contained in the Article were false before publishing them on the WSAZ website. (ECF No. 1 at 4). In response, Defendants argue that Cruse's defamation claim fails because the Article was privileged as a true and accurate report of a matter of public interest.[2] (ECF No. 12 at 2). Cruse counters this defense by arguing that the Boyd County Sheriff's Department's news release was not an official document or record upon which Defendants can claim the fair reporting privilege. (ECF No. 16 at 2-3).

In West Virginia, allegations of libel or slander are prosecuted under the broad category of defamation. *Workman v. Kroger Ltd. Partnership I*, Case No. 5:06-cv-0446, 2007 WL 2984698, *4 (S.D.W.V. Oct. 11, 2007) (citing *Greenfield v. Schmidt Baking Co., Inc.*, 485 S.E.2d 391, 399 (W. Va. 1997)); *Belcher v. Wal-Mart Stores, Inc.*, 568 S.E.2d 19, 26 (W. Va. 2002). Defamation is a false written or oral statement that tends to "reflect shame, contumely, and disgrace" upon an individual. Syl. pt. 1, *Sprouse v. Clay Commc'n, Inc.,* 211 S.E.2d 674 (W.Va. 1975). At common law, a statement is

---

[2] Defendant also argues that Cruse's defamation claim should be dismissed because the statements in the Article are true. Defendants have supplied a copy of the Kentucky State Police's investigative report concerning Cruse's arrest, which reiterates, albeit in greater detail, the statements allegedly made by Cruse regarding his role as a "mule" in a drug pipeline. (ECF No. 11-2 at 14). Cruse disputes that he ever made those statements to the investigating officers. In view of the fair report privilege afforded to the publication of the Article, the undersigned need not resolve the issue of truth.

defamatory *per se* if its defamatory meaning is readily apparent on its face, or if the statement falls into one of the traditional slander *per se* categories: imputation of (1) a crime of moral turpitude; (2) a loathsome disease; (3) a matter affecting the plaintiff's business; or (4) unchastity. *See Mauck v. City of Martinsburg*, 280 S.E.2d 216, 219 n.3 (W. Va. 1981).

To state a claim of defamation under West Virginia law, "a private individual must show (1) a defamatory statement; (2) a non-privileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) negligence, at a minimum, on the part of the publisher; and (6) resulting injury." *Tomblin v. WCHS-TV8,* 434 F. App'x 205, 216 (4th Cir. 2011) (citing *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 77 (1983)). Defendants assert that Cruse cannot meet this burden because the Article is protected by WSAZ's privilege to report official proceedings or public meetings, also called the "fair report" privilege. (*Id.* at 2).

The West Virginia Supreme Court of Appeals has adopted the fair report privilege, the details of which are "best summarized in § 611, *Restatement (Second) of Torts* (1977), which provides as follows:

> The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported."

*Hinerman v. Daily Gazette Company, Inc.*, 423 S.E.2d 560, 578 (1992). To qualify under the fair report privilege, the publication must not only be accurate, it must be fair. *Id.* It does not need to be exhaustive, or a verbatim account of the proceeding, but the publication must not omit or misplace official content, or include additions, in such a manner "as to convey an erroneous impression to those who hear or read it." *Id.*

8

(quoting § 611, *Restatement (Second) of Torts* (1977)).

In his opposition memorandum, Cruse does not dispute that the Article accurately summarizes the news release issued by the Boyd County Sheriff's Department, and a comparison of two confirms that the Article closely tracks the news release. Nonetheless, Cruse contends that the fair report privilege is not available to Defendants because they relied solely on the news release, which was not an official statement or record of a public proceeding. According to Cruse, the handwritten and "barely legible" news release was not part of the official arrest record or the judicial proceedings; as such, a republication of the "unattributed, defamatory statements" in the news release did not trigger protection under the privilege. (ECF No. 16 at 7-8).

Contrary to Cruse's argument, courts in this and other circuits have applied the fair report privilege to articles based upon documents such as the news release issued by the Boyd County Sheriff's Department. *See, e.g. Tharpe v. Media General, Inc.,* --F. Supp. 2d --, 2013 WL 6580519, *9 (D.S.C. Dec. 16, 2013) (Sheriff's department press release is a government report for purposes of the fair report privilege.); *Yohe v. Nugent,* 321 F.3d 35, 43 (1st Cir. 2003) (Statements made during interview of police chief regarding an arrest constituted an official statement for purposes of fair report privilege); *Kenney v. Scripps Howard Broad Co.,* 259 F.3d 922, 924 (8th Cir. 2001) (Police report of missing child was an official record for purposes of fair report privilege.); *Alsop v. Cincinnati Post,* 24 F. App'x 296, 297-98 (6th Cir. 2001); *Bailey v. Corbett*, Case No. 3:11–cv–1553 (JCH), 2013 WL 994466, *4 (D. Conn. Mar. 13, 2013) (Statement from official police spokesperson is an official statement providing fair reporting protection.); *DMC Plumbing and Remodeling, LLC v. Fox News Network, LLC* No. 12–cv–12867, 2012 WL 5906870, *4 (E.D. Mich. Nov. 26, 2012) (Fair report

privilege provides protection for articles based on police department press releases and other police reports of criminal incidents.); *Archibald v. Metro. Gov't of Nashville and Davidson County*, No. 3:11–0728, 2012 WL 3000137, *4 (M.D. Tenn. July 23, 2012) ("The fair report privilege applies to news reports made in reliance on police communications regarding the arrest of a criminal suspect."); *Hinkle v. St. Louis Post Dispatch,* No. 4:11 CV 1667 DDN, 2011 WL 6332995, *5 (E.D. Mo. Dec. 19, 2011) ("A publication relying on an official governmental news release may be entitled to qualified protection under the fair report privilege."); *McDonald v. Raycom TV Broad., Inc.*, 665 F. Supp. 2d 688, 690 (S.D. Miss. 2009) (citing cases that "recognize the principle that information released by the police, including reports and records, is generally considered to be a report of an official action subject to the fair report privilege ... This has routinely been held to include reports based on police press releases."); *Milligan v. United States*, 644 F. Supp. 2d 1020, 1034 (M.D. Tenn. 2009) ("[C]ourts in Tennessee and elsewhere have applied the fair report privilege to news reports made in reliance on police communications, both written and verbal, regarding the arrest of a criminal suspect.") ***Furthermore,*** "'accuracy' for fair report purposes refers only to the factual correctness of the events reported and not to the truth about the events that actually transpired.'" *Yohe,* 321 F.3d at 44. Indeed, the fair report privilege "permits a person to publish a report of an official action or proceeding or of a public meeting that deals with a matter of public concern, even though the report contains what he knows to be a false and defamatory statement." *Id.* (quoting *Restatement (Second) of Torts* § 611 cmt. b (2002)). Thus, Cruse's objection that the facts contained in the report itself were false is unavailing. *See Cobin v. Hearst-Argyle Television, Inc.*, 561 F. Supp. 2d 546, 555 (D.S.C. 2008); *Yohe*, 321 F.3d at 44 ("The privilege might still be vitiated by misconduct on the

newspapers' part, but that misconduct must amount to more than negligent, or even knowing, republication of an inaccurate official statement."); *Porter v. Guam Publ'ns, Inc.*, 643 F.2d 615, 617 (9th Cir. 1981) (applying fair report privilege to publication of police bulletin which included a report based on false charges made by a criminal complainant).

In the instant action, Defendants accurately reported the information supplied to them by the Boyd County Sheriff's Department in its official news release regarding Cruse's arrest. Moreover, Defendants made it clear in the Article that the information forming the basis of the report was obtained from the Boyd County Sheriff's Department. Consequently, Defendants are entitled to raise the protection afforded by the fair report privilege.

Nevertheless, the analysis does not end there. As Cruse points out in his opposition memorandum, there are two kinds of privileges that apply to communications; absolute and qualified. (ECF No. 16 at 5). The fair report privilege, being a qualified privilege as opposed to an absolute, "can be lost where, with actual malice, the press plainly adopts that defamatory statement as its own," *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1098 (4th Cir. 1993), or by the defendant's reckless disregard for the truth. *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 714 (4th Cir. 1991); *see also Crump,* 320 S.E.2d at 77 (discussing qualified privileges generally). In this case, Cruse's claims of actual malice and reckless disregard for the truth are based entirely upon his conclusory assertions that the Defendants published the Article for its sensational value and to increase advertising revenue. Cruse offers no factual allegations to support these contentions. Cruse also surmises in support of his malice claim that the Defendants published the Article without checking the truth of the statements. Even

assuming this assertion is correct, Cruse fails to supply any legal authority placing a duty on media defendants to investigate the accuracy of a police department's news release before publishing its contents. Indeed, the fair report privilege "has traditionally stopped short of imposing extensive investigatory requirements on a news organization reporting on a governmental activity or document," as such a duty would obviate the need for and purpose of the fair report privilege. *See Reuber*, 925 F.2d at 712-13 (citing *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 248, 255 (4th Cir. 1988)). WSAZ had the right to print the information supplied by the Sheriff's Department regarding an arrest involving a matter of public interest and properly attributed the statements to the Sheriff's Department. WSAZ did not vouch for the accuracy of the statements, and the article made it clear that the matter was still under investigation. Accordingly, Cruse fails to state facts, as opposed to conclusions, that support an allegation of actual malice, or demonstrate a reckless disregard for the truth.

Therefore, the undersigned **RECOMMENDS** that the District Court **FIND** that Cruse has failed to state a plausible claim for defamation against Defendants.

### B.     *Intentional Infliction of Emotional Distress*

Cruse contends that Defendants published the Article on the WSAZ website, either intending to cause Cruse emotional distress, or recklessly disregarding the probability that the Article would cause Cruse distress. (ECF No. 1 at 4). In response, Defendants argue that the facts asserted by Cruse simply fail to state a claim of intentional infliction of emotional distress. (ECF No. 12 at 12).

To maintain a cause of action for intentional infliction of emotional distress in West Virginia, the plaintiff must demonstrate:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syllabus Point 3, *Travis v. Alcon Laboratories, Inc.,* 202 W.Va. 369, 504 S.E.2d 419 (1998). As a rule, liability exists only when the conduct is so outrageous in character and so extreme in degree that it is utterly intolerable in a civilized community. *See Harless v. First Nat'l Bank in Fairmont,* 289 S.E.2d 692, 703-04, n.20 (1982); *Tanner v. Rite Aid of West Virginia, Inc.*, 461 S.E.2d 149, 157 (W. Va. 1995) ("Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"). The question of whether conduct may reasonably be considered atrocious, intolerable, extreme, and outrageous is a legal one. *See Hatfield v. Health Mgmt. Assocs. of West Virginia*, 672 S.E.2d 395, 404 (W. Va. 2008). Applying these standards, the undersigned finds that Cruse does not state a *prima facie* claim of intentional infliction of emotional distress.

The publication of information contained in an official government news release seldom rises to the level of outrageous behavior. *See, e.g., Morgenstern v. Fox Television Stations of Philadelphia*, Civil Acton No. 08–0562, 2008 WL 4792503, *11-12 (E.D. Pa. Oct. 31, 2008) (Publication of allegations that convention center executive was placed on leave for inappropriate e-mails to a 15-year old girl not actionable); *Trover v. Paxton Media Group, LLC*, Civil Action No. 4:05CV-014-H, 2007 WL 4302088 (W.D. Ky. Dec. 5, 2007) (Article claiming that actions of a local physician

13

placed hospital in jeopardy of losing Medicare and Medicaid certification not outrageous); *Hutchins v. Globe Intern, Inc.,* No. CS–95–097–JLQ, 1995 WL 704983 (E.D. Wash. Oct. 10, 1995) (Article reporting on arson charges against local minister was not defamatory; therefore, intentional infliction of emotional distress claim fails); *Conroy v. Kilzer*, 789 F. Supp. 1457, 1467-68 (D. Minn. 1992) (Newspaper article regarding allegations that fire chief was involved in arson not outrageous). Cruse's case is no exception. Although Cruse takes umbrage with the notion of being referred to as "mule," (ECF No. 16 at 14), neither the statement that "Man Calls Self 'Mule' in Drug Pipeline," nor the Defendants' conduct in failing to investigate independently whether Cruse in fact had referred to himself as such rose to the level of "extreme and outrageous" conduct.

What is more, to allow Cruse to circumvent the protections of the fair report privilege simply by alleging intentional infliction of emotional distress would defeat the purpose of the privilege. *See Yohe*, 321 F.3d at 44-45 ("[A] plaintiff cannot evade the protections of the fair report privilege merely by re-labeling his claim."); *McDonald,* 665 F. Supp. 2d at 691-92 (Fair report privilege forecloses claim of defamation, and all other claims "based on the very same factual predicate as [the] defamation claim."). Therefore, the undersigned **RECOMMENDS** that the District Court **FIND** that Cruse has failed to state a plausible claim for intentional infliction of emotional distress against Defendants.

### C.   *Negligent Infliction of Emotional Distress*

Cruse states as his third cause of action a claim of negligent infliction of emotional distress. (ECF No. 1 at 5). Courts are largely reluctant to award damages for emotional distress caused by negligent acts which produce no physical injury, *see*

*Harless*, 289 S.E.2d 692, 702 (1982); therefore, the tort of negligent infliction of emotional distress in West Virginia is narrowly drawn and "usually requires that the plaintiff witness a physical injury to a closely related person, suffer mental anguish that manifests itself as a physical injury and the plaintiff must be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant." *Belcher v. Goins,* 184 W.Va. 395, 408, 400 S.E.2d 830, 843 (W. Va. 1990). In order to recover for negligent infliction of emotional distress, a plaintiff generally must demonstrate "that his or her serious emotional distress was reasonably foreseeable, that the defendant's negligent conduct caused the victim to suffer critical injury or death, and that the plaintiff suffered serious emotional distress as a direct result of witnessing the victim's critical injury or death." *Heldreth v. Marrs*, 425 S.E.2d 157, 169 (W. Va. 1992).

The Supreme Court of Appeals of West Virginia has subsequently endorsed the view that "[a]lthough physical injury is no longer a necessary element of a negligent infliction of emotional distress claim, such a cause of action generally must be premised on conduct that unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for his or her physical safety." *Brown v. City of Fairmont*, 655 S.E.2d 563, 569 (W. Va. 2007); *see also Marlin v. Bill Rich Constr., Inc.*, 482 S.E.2d 620, 638 (W. Va. 1996) (holding that plaintiffs could pursue a claim of negligent infliction of emotional distress absent physical injury based upon the fear of contracting a disease where "he or she was actually exposed to the disease by the negligent conduct of the defendant"). Accordingly, in *Brown*, the Supreme Court of West Virginia rejected a claim of negligent infliction of intentional distress by a retired firefighter who alleged that the defendants had negligently administered his pension benefits prior to his retirement. *Brown*, 655 S.E.2d at 565, 569. Similarly, in this case Cruse plainly fails to

15

state factual allegations consistent with a claim of negligent infliction of emotional distress in that he has not alleged any physical injury, or fear of physical injury, suffered by him or a close relative as a result of the publication of the Article.

Therefore, the undersigned **RECOMMENDS** that the District Court **FIND** that Cruse has failed to state a plausible claim for negligent infliction of emotional distress against Defendants.

### D.    Punitive Damages

Cruse alleges as his fourth cause of action a claim for punitive damages. (ECF No. 1 at 5). In West Virginia, claims for punitive damages are assessed using a two-step process: "first, a determination of whether the conduct of an actor toward another person entitles that person to a punitive damage award under *Mayer v. Frobe*, 40 W.Va. 246, 22 S.E. 58 (1895); second, if a punitive damage award is justified, then a review is mandated to determine if the punitive damage award is excessive under *Garnes v. Fleming Landfill, Inc.*, 186 W.Va. 656, 413 S.E.2d 897 (1991)." *Alkire v. First Nat. Bank of Parsons*, 475 S.E.2d 122, 131 (W. Va. 1996). Under *Mayer*, punitive damages may be appropriate "in actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it." *Perrine v. E.I. du Pont de Nemours and Co.*, 694 S.E.2d 815, 883 (W. Va. 2010) (quoting *Mayer*, syl. pt. 4, 22 S.E. at 58).

However, as Defendants point out, West Virginia does not recognize a stand-alone action for punitive damages. *See Perrine*, 694 S.E.2d at 900 ("The right to recover punitive damages in any case is not the cause of action itself, but a mere incident thereto.") (internal marks omitted). Thus, "a plaintiff must have sustained an injury and

be awarded compensatory damages therefor before he/she may receive an award of punitive damages." *Id.* Here, Cruse has failed to state a cognizable claim for defamation or emotional distress. He is therefore not entitled to independently seek punitive damages.

Thus, the undersigned **RECOMMENDS** that the District Court **FIND** that Cruse has failed to state a plausible claim for punitive damages.

## V. <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the United States District Judge accept and adopt the findings herein and **RECOMMENDS** that the Defendants' Motion to Dismiss Plaintiff's Complaint, (ECF No. 11), be **GRANTED**; that Plaintiff's complaint be **DISMISSED**; and this action be removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court

17

of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, Defendants, counsel of record, and any unrepresented party.

**FILED:** April 7, 2014

Cheryl A. Eifert
United States Magistrate Judge

18